2019 IL App (3d) 190032

Opinion filed July 2, 2019

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| CATERPILLAR INC., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Peoria County, Illinois, |
| | ) | |
| v. | ) | |
| | ) | |
| CENTURY INDEMNITY COMPANY, | ) | |
| as Successor to CCI Insurance Company, | ) | |
| as Successor to Insurance Company | ) | Appeal No. 3-19-0032 |
| of North America; INSURANCE | ) | Circuit No. 11-MR-203 |
| COMPANY OF NORTH AMERICA; | ) | |
| EMPLOYERS INSURANCE COMPANY OF | ) | |
| WAUSAU; and RESOLUTE MANAGEMENT, | ) | |
| INC., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (Employers Insurance Company of Wausau, | ) | Katherine S. Gorman Hubler, |
| Defendant-Appellee). | ) | Judge, Presiding. |

JUSTICE WRIGHT delivered the judgment of the court, with opinion.
Justices Carter and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1        Appellant, Caterpillar Inc. (Caterpillar), brought a complaint for declaratory judgment, breach of contract, and other relief against appellee, Employers Insurance Company of Wausau (Wausau), among others, seeking an order from the trial court declaring Wausau was

contractually required to pay or indemnify Caterpillar for the costs incurred while defending itself against personal injury claims arising from welding fumes. The trial court, pursuant to the parties' 1999 settlement and partial policy release agreement (1999 Agreement), granted Wausau's request to stay this litigation and compelled the parties to comply with the agreed dispute resolution procedure contained in section 7 of the 1999 Agreement. Caterpillar appeals.

¶ 2                                    I. BACKGROUND

¶ 3        Wausau sold Caterpillar insurance policies between 1981 and 1985. Between 1995 and 2007, Caterpillar defended itself against thousands of personal injury claims alleging Caterpillar was liable for bodily injuries resulting from exposure to welding fumes. In 2007, as a result of its efforts, Caterpillar was dismissed from the welding fumes litigation pending in federal court. See *In re Welding Fume Products Liability Litigation*, 526 F. Supp. 2d 775, 777 (N.D. Ohio 2007).

¶ 4        On March 17, 2011, Caterpillar filed its complaint, requesting a declaration from the trial court that the insurance policies issued by Wausau between 1981 and 1985 required Wausau to pay or indemnify Caterpillar for the $18 million in costs Caterpillar incurred while defending itself against the welding fumes claims.[1] Caterpillar alleged that it provided Wausau notice of the welding fumes claims between 1995 and 2007. However, according to Caterpillar, Wausau and Century Indemnity Company (Century) refused to pay or indemnify Caterpillar for its defense costs.[2] Wausau resisted Caterpillar's lawsuit on the grounds that Wausau's obligation to pay or indemnify Caterpillar for its defense costs must be settled under the parties' 1999 Agreement, including section 7's dispute resolution procedures.

---

[1]Caterpillar's counsel suggested at oral argument that approximately four years separated the dismissal of the welding fumes litigation and the filing of Caterpillar's complaint against Wausau because of ongoing insurance coverage litigation with other insurance companies.

[2]Caterpillar and Century, a nonparty to the 1999 Agreement, settled their dispute in 2016. The parties had engaged in both litigation and dispute resolution prior to 2016.

¶ 5    The three-step dispute resolution procedure is set forth below.[3]

"7.    DISPUTE RESOLUTION. In the event of a dispute between the Parties regarding any aspect of this Agreement, including the application of the terms of this Agreement to a Claim, the Parties agree to attempt to resolve their respective disputes through a three-step procedure—meetings, mediation and then, if necessary, binding arbitration. A Party may not commence mediation without first completing the meeting process and may not commence arbitration under this Agreement without first completing the mediation process as defined below.

7.1    Meetings: The existence of a dispute is established when one Party notifies another, in writing, of the existence and nature of a dispute along with a reference to this provision of the Agreement. Within fifteen (15) business days after receipt of said notice, the Parties or their representatives shall meet in Chicago (or such other location as the Parties may mutually agree) and confer in an effort to determine the nature of the dispute and whether it can be amicably resolved.

7.2    Non-Binding Mediation: If the Parties cannot resolve the dispute at the meeting referenced above, or subsequent meetings held upon agreement of the Parties, the Parties agree to attempt in good faith to resolve the dispute through confidential, nonbinding, third-party mediation. The Parties agree to mediate all disputes in Chicago (or such other location as the Parties may mutually agree) under the auspices of JAMS/ENDISPUTE before a mediator with a substantial background in insurance law.

_____

[3]Solar Turbines, Inc., a nonparty to this litigation, was also a party to the 1999 Agreement. The 1999 Agreement was executed between the parties on July 15, 1999.

The Parties shall share equally the costs of the mediation and shall each bear their own costs and fees, including attorney fees, associated with the mediation.

7.3 Binding Arbitration: If a mediated resolution to the dispute is not achieved within ninety (90) days of the selection of a mediator (or such additional time as the Parties may agree in writing), any Party may serve on the other a written demand for arbitration of the unresolved dispute.

(a) The unresolved dispute shall be submitted to binding arbitration (without any right of appeal) in Chicago (or such other location as the Parties may mutually agree) before a single arbitrator selected by the Parties with a substantial background in insurance law. If the Parties cannot agree on the arbitrator within thirty (30) days of a written demand for arbitration, the arbitrator shall be selected by the American Arbitration Association [(AAA)] but subject to the Parties' agreement that the arbitrator shall have a substantial background in insurance law.

(b) Unless otherwise agreed by the Parties within thirty (30) days of a written demand for arbitration, the Commercial Rules and Procedures of the American Arbitration Association shall apply to the arbitration under this provision and Illinois law shall govern.

(c) The Parties shall abide by the arbitrator's award, and judgment on that award may be entered by the U.S. District Court for the Northern District of Illinois (Eastern Division) pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1-16, or by the Circuit Court of Cook County, Illinois pursuant to the United States or Illinois Arbitration Act, with each party to share equally the costs of the arbitration and each Party to bear its own costs of the arbitration."

¶ 6    Section 7.4 of the 1999 Agreement outlines a limitations period. This section provides:

"7.4    Any and all disputes under this Agreement shall be subject to a limitations period of two years from the date on which the dispute arose."

¶ 7    On April 6, 2011, Wausau was served with Caterpillar's complaint. On April 27, 2011, Wausau's counsel sent Caterpillar a letter denying any duty to defend against the welding fumes claims. Further, relying on the 1999 Agreement, Wausau's counsel asserted that Wausau was discharged and released from insurance coverage liability for the welding fumes claims and that the parties' insurance relationship was extinguished by the 1999 Agreement.

¶ 8    Also in the April 27, 2011, letter, Wausau's counsel stated "a dispute exists between Caterpillar and Wausau with respect to the nature, scope, and effect of the 1999 Agreement and its applicability to the underlying welding rod fumes claims." Accordingly, under section 7.1 of the 1999 Agreement, Wausau's counsel requested a meeting with Caterpillar within 15 days.

¶ 9    On May 2, 2011, Caterpillar's counsel responded to Wausau's letter, stating Caterpillar did not agree the 1999 Agreement governed the welding fumes claims. Thus, Caterpillar's counsel argued Wausau could not rely on section 7 of the 1999 Agreement. Nonetheless, Caterpillar agreed to meet with Wausau on July 15, 2011. On May 10, 2011, Caterpillar filed another complaint, adding Resolute Management, Inc., as a party.

¶ 10   Wausau answered Caterpillar's complaint and raised multiple affirmative defenses on June 13, 2011. In its answer, Wausau twice requested that the trial court stay the litigation pending arbitration. Further, in its first affirmative defense, Wausau stated Caterpillar's claim for insurance coverage in the trial court was barred by "a dispute resolution agreement." Wausau's second and third affirmative defenses asserted that the parties' insurance relationship had been extinguished and Caterpillar's claims for coverage were barred by discharge and release.

¶ 11    On June 28, 2011, Caterpillar requested discovery from Wausau. Thereafter, on July 13, 2011, Caterpillar agreed to give Wausau an extended amount of time to comply.[4]

¶ 12    Century filed two cross-claims against Wausau in the trial court on July 11, 2011. The first cross-claim sought a declaration that Wausau must pay a portion of Caterpillar's defense costs from the welding fumes litigation. The second cross-claim sought a declaration that Wausau must indemnify Caterpillar for the costs of defending the welding fumes claims.

¶ 13    On July 15, 2011, Wausau and Caterpillar met pursuant to Wausau's request in the April 27, 2011, letter. The record suggests this July 2011 meeting did not resolve the parties' dispute over the scope and applicability of the 1999 Agreement or Wausau's duty to pay or indemnify Caterpillar for the defense costs incurred in the welding fumes litigation.

¶ 14    Thereafter, on August 4, 2011, Wausau filed an answer, affirmative defenses, and demand for jury trial with respect to Century's cross-claims. In Wausau's answer to the cross-claims, Wausau twice requested a stay to the litigation pending arbitration with Caterpillar. Further, Wausau filed affirmative defenses to Century's cross-claims, which were identical to the first three affirmative defenses filed against Caterpillar.

¶ 15    On March 30, 2012, Wausau filed its first motion to stay the litigation pending "completion of the contracted-for dispute resolution process," arguing Wausau invoked section 7 of the 1999 Agreement by establishing a dispute between the parties under section 7.1 in its letter dated April 27, 2011. Wausau requested that the trial court find section 7 of the 1999 Agreement covered the dispute regarding Caterpillar's defense costs.[5]

¶ 16    Further, Wausau's first motion to stay acknowledged the 1999 Agreement was protected by a confidentiality provision. Thus, the details of the 1999 Agreement could not be disclosed in

---

[4]This information is contained in the trial court's integrated timeline, but the deadline for the extended discovery, if any, does not appear in the record.
[5]The motion was not scheduled for a hearing.

the pending litigation without a court order. Wausau stated it would take the appropriate steps, whether by agreement with Caterpillar or by a motion with the trial court, to produce a confidentiality order. Further, upon entry of that confidentiality order, Wausau indicated it would submit a memorandum in support of its motion to stay with the 1999 Agreement.

¶ 17        On March 30, 2012, Wausau's counsel also sent a letter to Caterpillar's counsel, stating "the next step for the parties is *** non-binding mediation in Chicago." Attached to the letter was a JAMS case submission form, signaling a mediation had been initiated under section 7.2.[6] In response, Caterpillar renewed its request for documents from Wausau.[7]

¶ 18        On April 23, 2012, Caterpillar's counsel responded to two e-mails sent by JAMS to Caterpillar on April 9 and 12, 2012. Caterpillar stated it did "not believe that the dispute resolution process in the 1999 Settlement Agreement ha[d] been triggered." Caterpillar argued there were issues of timeliness related to Wausau's invocation of section 7 and noted the trial court was "yet to order the parties to mediate any dispute." Caterpillar explained to JAMS that compliance with the request for documents by Wausau would "help Caterpillar decide what path to take with respect to the request to mediate." Caterpillar told JAMS "[o]nce we have [Wausau]'s response and have had a chance to consider it, we will be back in touch about Caterpillar's position about a JAMS mediation."

¶ 19        On April 14, 2015, Wausau filed a second or renewed motion to stay and compel arbitration, seeking to require "Caterpillar to meaningfully complete the multi-step dispute resolution process." Wausau's renewed motion again discussed the 1999 Agreement's confidentiality issues and stated a memorandum in support would be forthcoming upon entry of a

---

[6]JAMS is formerly known as Judicial Arbitration and Mediation Services, Inc.
[7]This request remained unfulfilled by Wausau.

confidentiality order by the trial court.[8] On January 25, 2016, Wausau filed a memorandum in support of its renewed motion under seal. A sealed copy of the 1999 Agreement was attached.

¶ 20    On February 22, 2016, Caterpillar filed a memorandum opposing Wausau's renewed motion. Several agreed extensions of time occurred over the next 22 months.[9] Wausau filed a reply to Caterpillar's opposing memorandum on December 18, 2017.

¶ 21    On January 18, 2018, the trial court conducted a hearing on Wausau's renewed motion to stay and compel arbitration.[10] The trial court then took the matter under advisement. On December 14, 2018, the trial court filed a written order, wherein the trial court observed that "neither party aggressively pursued [the] litigation." The trial court also observed that Wausau initiated mediation and neither party would be prejudiced by engaging in mediation. The trial court granted Wausau's renewed motion to stay, compelling the parties to comply with section 7 of the 1999 Agreement. Caterpillar filed a notice of appeal on January 14, 2019.

¶ 22                                II. ANALYSIS

¶ 23    On appeal, Caterpillar challenges the trial court's December 14, 2018, decision to stay the litigation and compel compliance with section 7. First, Caterpillar argues Wausau waived its right to dispute resolution. Second, Caterpillar claims Wausau failed to comply with the two-year limitations period contained in section 7.4 of the 1999 Agreement. On this basis, Caterpillar argues dispute resolution would now be untimely.

---

[8]The record on appeal does not contain a confidentiality order.

[9]In response to an inquiry from this court during oral argument, Caterpillar's counsel explained that, in these intervening 22 months, the parties participated in a mediation under the 1999 Agreement. However, as was admitted by Caterpillar's counsel, nothing related to this mediation was included in the record on appeal.

[10]The January 18, 2018, hearing on Wausau's renewed motion was not recorded. Therefore, there is no report of proceedings on appeal.

¶ 24                                A. Standard of Review

¶ 25        Generally, a trial court's decision on a motion to compel arbitration is reviewed for an abuse of discretion. *Watkins v. Mellen*, 2016 IL App (3d) 140570, ¶ 12. However, if the trial court does not hold an evidentiary hearing or make findings on disputed facts, then the trial court's decision is reviewed *de novo*. *Id.*; *Vassilkovska v. Woodfield Nissan, Inc.*, 358 Ill. App. 3d 20, 24 (2005). Similarly, potential waivers of the right to arbitration are subject to *de novo* review. *Watkins*, 2016 IL App (3d) 140570, ¶ 12. In the present case, the trial court did not hold an evidentiary hearing or make factual findings but instead engaged in a pure legal analysis. Thus, the issues raised by Caterpillar are reviewed *de novo*. See *Vassilkovska*, 358 Ill. App. 3d at 24.

¶ 26                        B. Waiver of the Right to Dispute Resolution

¶ 27        Although arbitration is the preferred method for resolving disputes in Illinois, a party may waive his or her contractual right to arbitrate. *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 38; *Watkins*, 2016 IL App (3d) 140570, ¶ 13. A finding of waiver is generally disfavored. *Lopez*, 2017 IL 120643, ¶ 38; *Watkins*, 2016 IL App (3d) 140570, ¶ 13. However, a waiver exists when a party acts inconsistently with the agreement to arbitrate, indicating an abandonment of that right. *Lopez*, 2017 IL 120643, ¶ 38; *Watkins*, 2016 IL App (3d) 140570, ¶ 13.

¶ 28        The case law makes clear that a party acts inconsistently with an agreement to arbitrate by submitting substantive issues under the agreement to the trial court for consideration before invoking an arbitration clause or seeking an order compelling arbitration. See *Watkins*, 2016 IL App (3d) 140570, ¶¶ 13-15. The nature of the issues submitted to the trial court, rather than the form or number of documents, determines whether arbitration was waived. *Id.* ¶ 15; *Kostakos v. KSN Joint Venture No. 1*, 142 Ill. App. 3d 533, 536-37 (1986). Delays in asserting the right to

arbitrate, and the resulting prejudice to the other party, are also considered when conducting waiver assessments. *Bishop v. We Care Hair Development Corp.*, 316 Ill. App. 3d 1182, 1191 (2000); see also *Kostakos*, 142 Ill. App. 3d at 537.

¶ 29 Consistent with these principles, our court has identified instances when a party's presentation of certain substantive issues in the trial court, before invoking an arbitration clause or seeking to compel arbitration, results in a waiver of the right to arbitrate. See *Watkins*, 2016 IL App (3d) 140570, ¶¶ 13-15. Those instances resulting in a waiver include filing a motion for summary judgment, filing an answer without asserting the right to arbitrate, filing a motion to dismiss without raising the arbitration clause, or otherwise instituting legal proceedings on the merits. *Id.* ¶ 14; *Jenkins v. Trinity Evangelical Lutheran Church*, 356 Ill. App. 3d 504, 508 (2005). However, filing an answer with an arbitration agreement as an affirmative defense does not result in waiver. *Watkins*, 2016 IL App (3d) 140570, ¶ 14; *Jenkins*, 356 Ill. App. 3d at 508.

¶ 30 1. Wausau's Presentation of Substantive Issues Under the 1999 Agreement

¶ 31 Caterpillar argues Wausau presented substantive issues to the trial court by filing an answer to Caterpillar's complaint, complete with 43 affirmative defenses, demanding a jury trial, answering cross-claims filed by Century, and attending trial court hearings without raising section 7. Thus, Caterpillar asserts Wausau's conduct was inconsistent with, and constitutes a waiver of, section 7 of the 1999 Agreement.

¶ 32 Initially, a brief review of the record is necessary. Before answering Caterpillar's complaint, dated March 17, 2011, Wausau, in its April 27, 2011, letter, took the necessary steps to establish a dispute and request a meeting under section 7.1 of the 1999 Agreement. Similarly, on June 13, 2011, as part of Wausau's answer to Caterpillar's complaint, Wausau twice requested for the trial court to stay the litigation pending arbitration. Further, in its first

affirmative defense, Wausau clearly stated Caterpillar's claim was barred by "a dispute resolution agreement." Wausau's second and third affirmative defenses also alleged the parties' prior insurance relationship was extinguished and the claims for insurance coverage were barred by the 1999 Agreement's discharge and release provisions.

¶ 33      On August 4, 2011, Wausau also filed its answer and affirmative defenses to Century's cross-claims. In these documents, Wausau asserted its section 7 rights in the same way as it did in response to Caterpillar's complaint.

¶ 34      As stated above, the case law provides that a party is entitled to file an answer and plead affirmative defenses, while also asserting the right to arbitrate, without constituting waiver. See *Watkins*, 2016 IL App (3d) 140570, ¶ 14; *Jenkins*, 356 Ill. App. 3d at 508. Thus, we conclude Wausau's responsive pleadings did not submit substantive issues to the trial court before Wausau had asserted its right to dispute resolution under section 7 of the 1999 Agreement. As a result, the above facts defeat Caterpillar's contention that Wausau waived its right to dispute resolution.

¶ 35      Moreover, the case cited by Caterpillar, *Koehler v. The Packer Group, Inc.*, is distinguishable. See 2016 IL App (1st) 142767. In *Koehler*, unlike the case before our court, the defendants' answer did not request or preserve their right to arbitrate. *Id.* ¶¶ 10, 25. Consequently, Wausau did not act inconsistently with section 7 by filing responsive pleadings.

¶ 36      2. Wausau's Delays Before Asserting the Right to Dispute Resolution

¶ 37      a. Period of 1999 to 2007

¶ 38      Caterpillar argues, in the years preceding this litigation, Wausau never asserted or initiated the 1999 Agreement's release or dispute resolution provisions. Thus, Wausau was dilatory and acted inconsistently with its agreement to engage in dispute resolution. Caterpillar urges this court to conclude that, if Wausau believed it was released from any duty regarding

Caterpillar's costs of defending the welding fumes claims, then Wausau should have established a dispute under section 7.1 between 1999 and 2007, when Caterpillar provided Wausau notices of the welding fumes claims. Again, Caterpillar's argument is unpersuasive.

¶ 39     The record reflects that Caterpillar gave notice of, and asked Wausau to protect Caterpillar's interests in, the welding fumes claims. However, neither Caterpillar's notices nor particularized facts about the precise language contained in Caterpillar's notices can be found in the record. We cannot speculate regarding the language of each notice and, thus, are left wondering what specific duty Caterpillar purported to trigger from Wausau with each notice.

¶ 40     It seems clear that Caterpillar understood Wausau did not have a duty to defend Caterpillar in the welding fumes litigation and did not make a request for Wausau to present Caterpillar's defense. For example, in the footnote on page 10 of its reply brief, Caterpillar states "[n]or is there any significance to the fact that the Wausau Policies provide a duty to pay defense costs, rather than a duty to defend." Here, the lack of information in the record regarding the language of Caterpillar's notices makes it difficult for our court to determine the appropriateness of Wausau's inaction between 1999 and 2007.

¶ 41     If, on the one hand, Caterpillar's notices merely served to inform Wausau of a duty to pay or indemnify Caterpillar for defense costs at the conclusion of the welding fumes litigation, then it would be reasonable for Wausau to wait for a final tally of and formal demand for defense costs by Caterpillar before invoking section 7 of the 1999 Agreement. Otherwise, Wausau would seek to establish a dispute over the scope and applicability of the 1999 Agreement under section 7's meeting requirement, then potentially seek to resolve the dispute over defense costs more broadly under the mediation and arbitration requirements, before the amount of Caterpillar's defense costs became fixed by a final judgment, settlement, or dismissal. Essentially, Wausau

would be seeking to fulfill an obligation to pay or indemnify Caterpillar's defense costs before a notification that the balance was known or due. This puts the proverbial cart before the horse.

¶ 42    If, on the other hand, Caterpillar intended for the notices to inform Wausau of an immediate duty to pay growing defense costs as they accrued during the ongoing welding fumes litigation, then Wausau may have been expected to establish a dispute over those amounts under section 7.1 between 1999 and 2007. However, nothing in the record indicates Caterpillar's notices during this time included an immediate demand for Wausau to pay any portion of Caterpillar's defense costs.

¶ 43    In its reply brief and at oral argument, Caterpillar suggests our supreme court's precedent on "actual notice" of a duty to defend indicates Wausau's duty under the parties' insurance policies was triggered between 1999 and 2007. See *Cincinnati Cos. v. West American Insurance Co.*, 183 Ill. 2d 317, 329 (1998) ("where the insured has not knowingly decided against an insurer's involvement, the insurer's duty to defend is triggered by actual notice of the underlying suit," *i.e.*, notice sufficient to locate and defend the lawsuit). However, as noted by Caterpillar's reply brief, Wausau did not hold a duty to defend in the welding fumes litigation.

¶ 44    Further, even if Wausau, at a minimum, had "actual notice" of the welding fumes claims and the pending litigation against Caterpillar, the record does not identify the particular duty triggered by that actual notice. By extension, we cannot conclude Wausau's inaction in asserting a dispute over that duty was dilatory. Thus, Caterpillar's notices between 1999 and 2007 and the "protect our interests" language were insufficient to trigger a dispute over Wausau's duty to pay or indemnify Caterpillar for its defense costs under section 7 of the 1999 Agreement.

¶ 45    In sum, Caterpillar's notices raise more questions about Wausau's duty to pay or indemnify Caterpillar for defense costs than they do answers. These questions require

consideration of the scope and applicability of the 1999 Agreement and the underlying insurance policies, which is a task uniquely suited for dispute resolution. Again, nothing indicates Caterpillar requested Wausau's immediate contribution toward the costs of the pending welding fumes litigation between 1999 and 2007.

¶ 46                                 b. Period of 2007 to 2011

¶ 47        Similarly, the record is unclear whether, after the dismissal of the federal welding fumes litigation, Caterpillar specifically demanded Wausau to pay or indemnify any part of Caterpillar's defense costs. Instead, the record indicates Caterpillar first demanded payment of or indemnification for its defense costs, totaling $18 million, on March 17, 2011, when it filed its complaint. In the four previous years, Caterpillar admits it was litigating with other insurance companies. Thus, the delay between 2007 and 2011 seems equally attributable to Caterpillar. We conclude Wausau's inaction before the initiation of the current litigation was not dilatory.

¶ 48                                 c. Period of 2011 to 2016

¶ 49        Caterpillar submits Wausau's inaction during certain periods between March 17, 2011, when Caterpillar filed its complaint, and April 14, 2015, when Wausau filed its renewed motion to stay and compel arbitration, constitutes a waiver of section 7. However, we do not find the cases cited by Caterpillar to be analogous to the case on appeal. For example, the periods in *Northeast Illinois Regional Commuter R.R. Corp. v. Chicago Union Station Co.*, 358 Ill. App. 3d 985, 998-99 (2005), unlike the meeting, mediation, and arbitration provisions in section 7, specified precise five-year and six-month review and negotiation periods. Further, unlike in *Yandell v. Church Mutual Insurance Co.*, 274 Ill. App. 3d 828, 832 (1995), Wausau did not fail to comply with the initial requirements of section 7 before delaying in filing a motion to compel. Lastly, unlike in *Cencula v. Keller*, 152 Ill. App. 3d 754, 758 (1987), Wausau asserted its right to

dispute resolution almost immediately after receiving Caterpillar's complaint and did not submit substantive issues to the trial court.

¶ 50 Rather, in this case, it is undisputed that, on July 15, 2011, the parties conducted a meeting that qualified as the first step of dispute resolution under section 7.1 of the 1999 Agreement. By all accounts, the meeting was fruitless. Just 8 months later, on March 30, 2012, Wausau dutifully initiated the second step of dispute resolution, namely, a nonbinding mediation under section 7.2. Also on this day, Wausau filed its first motion to stay the litigation pending "completion of the contracted-for dispute resolution process." In our view, Wausau was not dilatory due to the timing of these actions.

¶ 51 Of course, Caterpillar disagrees, pointing out that Wausau did not schedule the original motion to stay, dated March 30, 2012, for a hearing before the trial court or file a memorandum in support of that first motion. This is true. It is also true that Wausau stated it would file a memorandum in support of its first motion to stay once the 1999 Agreement's confidentiality issues were resolved by court order or by an agreement of the parties.

¶ 52 However, after Wausau's first motion to stay was filed, Caterpillar did not respond with an objection. In the absence of responsive action, Wausau's first motion to stay essentially went unopposed by Caterpillar. It is telling that Caterpillar would now so vigorously oppose the circumstances surrounding the first motion to stay, when the time and opportunity to object to the first motion to stay were shortly after its filing in the trial court.

¶ 53 Eventually, on April 14, 2015, Wausau revisited the issue by filing a renewed motion to stay the litigation and compel arbitration. Again, Wausau's renewed motion to stay sought an order for "Caterpillar to meaningfully complete the multi-step dispute resolution process." The record does not clearly reflect the parties' actions in the trial court during this 36½ month gap.

¶ 54    However, Caterpillar's e-mail to JAMS, dated April 23, 2012, provides insight into Caterpillar's contributions toward the delay. In that e-mail, Caterpillar restated its position that section 7 of the 1999 Agreement had not been triggered by Wausau. In the same e-mail, Caterpillar noted that, with respect to the second step of section 7, the trial court was "yet to order the parties to mediate any dispute." Further, Caterpillar notified JAMS that Caterpillar previously requested documents from Wausau and stated those documents would "help Caterpillar decide what path to take with respect to the request to mediate." Caterpillar explained to JAMS that "[o]nce we have [Wausau]'s response and have had a chance to consider it, we will be back in touch about Caterpillar's position about a JAMS mediation."

¶ 55    Interestingly, Caterpillar once again chose not to file an objection in response to Wausau's April 14, 2015, renewed motion to stay.[11] In fact, Wausau's renewed motion attracted no attention from either party until 9 months later, on January 25, 2016, when Wausau filed its supporting memorandum with the attached and sealed 1999 Agreement. Prior to February 22, 2016, when Caterpillar filed its memorandum opposing Wausau's renewed motion to stay, Caterpillar seemed unconcerned about the progress of the trial court litigation. At this time, Caterpillar was engaged in negotiations and dispute resolution with Century.

¶ 56    Therefore, the inaction of both parties allowed the pending motions and the dispute resolution procedures to stall in the trial court. Even though our review is *de novo* and we afford no deference to the trial court's rationale on appeal, we would be remiss if we failed to commend the trial court for its thorough consideration and compilation of the integrated timeline in this case, which was helpful to our court. Following our independent review of the record, we conclude neither party actively pursued this litigation. Thus, we agree with the First District in

[11]If Wausau had complied with Caterpillar's discovery requests or Caterpillar had sought to compel discovery from Wausau, Caterpillar would likely be arguing that Wausau participated on the merits of the litigation, thereby waiving its right to dispute resolution.

*Kostakos*. Where "both parties contributed to the delays," the court cannot say, as a matter of law, that the trial court abused its discretion by finding "the delay caused by defendants did not constitute a waiver of the right to arbitrate."[12] *Kostakos*, 142 Ill. App. 3d at 537.

¶ 57     By way of review, the record documents that between March 17, 2011, and April 14, 2015, Wausau took the following significant steps to assert its right to dispute resolution: (1) on April 27, 2011, Wausau sent a letter to Caterpillar, invoking section 7 and establishing the existence of a dispute under section 7.1; (2) on June 13, 2011, Wausau filed an answer and affirmative defenses to Caterpillar's complaint, expressly asking to stay the litigation and compel arbitration; (3) on July 15, 2011, in accordance with section 7.1, Wausau attended a meeting with Caterpillar to determine the nature of the dispute; (4) on August 4, 2011, Wausau filed an answer and affirmative defenses to Century's cross-claims, expressly asking to stay the litigation and compel arbitration with Caterpillar; (5) on March 30, 2012, Wausau notified Caterpillar that, pursuant to section 7.2, Wausau initiated a mediation with JAMS; (6) on March 30, 2012, Wausau filed its original motion to stay pending completion of dispute resolution; and (7) on April 14, 2015, Wausau filed its renewed motion to stay and compel arbitration, seeking to require "Caterpillar to meaningfully complete the multi-step dispute resolution process." A number of the above actions were mandated by section 7.

¶ 58     Thus, after carefully reviewing the record, we conclude Wausau's course of conduct during the four-year period between March 17, 2011, and April 14, 2015, cannot be viewed as inconsistent with Wausau's right to dispute resolution. As discussed above, the record reflects that after being served with Caterpillar's complaint on April 6, 2011, and then consistently

_____

[12]We understand our review is not for an abuse of discretion but agree with the holding that mutual delay does not support a finding that one party waived the right to arbitration.

- 17 -

throughout the course of the proceedings in the trial court, Wausau took immediate and significant action to resolve the parties' dispute under the procedure outlined in section 7.

¶ 59 Further, section 7 does not dictate or limit the time for advancing from one step to the next. Here, based upon the parties' separate contributions toward the delays in the trial court, we conclude Wausau did not act inconsistently with its right to dispute resolution under section 7. Thus, we also conclude Caterpillar was not prejudiced.

¶ 60 C. Section 7.4's Two-Year Limitations Period

¶ 61 Lastly, we address Caterpillar's contention that dispute resolution is barred because the two-year limitations period contained in section 7.4 expired before Wausau satisfied the meeting, mediation, and arbitration requirements of section 7. Caterpillar made a similar argument for a waiver finding, stating Wausau at "no point from April 2011 to April 2013 *** compl[ied] with the express terms of the dispute resolution provision" and "made no effort to *complete* the three-step process within the two year limitations period (or at all)." (Emphasis in original.) Wausau argues it complied with section 7.4 by establishing a dispute in its April 27, 2011, letter and points out that there are no other time requirements for the resolution of disputes.

¶ 62 Section 7.4 provides: "Any and all disputes under this Agreement shall be subject to a limitations period of two years from the date on which the dispute arose." Section 7 is otherwise silent on the time to complete the meeting, mediation, and arbitration requirements. However, we agree section 7 mandates a three-step procedure and section 7.1 defines the method for establishing a dispute under the 1999 Agreement.

¶ 63 Here, Caterpillar's criticism of Wausau's conduct is misplaced. The parties agreed in their briefs and at oral argument that Wausau established a dispute under section 7.1 on April 27, 2011, when Wausau sent its letter to Caterpillar requesting a meeting. While the July 15, 2011,

meeting was fruitless, the meeting nonetheless took place as requested by Wausau under section 7.1. Wausau's next step was to arrange a mediation with JAMS under section 7.2. This second step was taken on March 30, 2012, as was the filing of Wausau's original motion to stay pending completion of dispute resolution. The mediation stalled after Caterpillar disputed the propriety of mediation in its April 23, 2012, letter to JAMS, and neither party sought to appoint a mediator.

¶ 64　　　　However, Wausau's desire to stay the litigation pending completion of dispute resolution, rather than arbitration, on March 30, 2012, recognized that the parties were noncompliant with the three-step procedure outlined in section 7. Under section 7, Wausau could not commence arbitration before mediation or demand arbitration without seeing if "a mediated resolution to the dispute [wa]s *** achieved within ninety (90) days of the selection of a mediator." Thus, commencing or demanding arbitration at this time would have been premature and would have conflicted with the express language of section 7. As a result, Wausau complied with section 7.4 by requesting and attending a meeting under section 7.1, initiating a mediation with JAMS under section 7.2, and seeking a stay to the litigation to complete "the contracted-for dispute resolution process," rather than arbitration, within two years of when the dispute arose on April 27, 2011.

¶ 65　　　　In sum, the trial court properly stayed the insurance litigation and compelled the parties to comply with section 7 of the 1999 Agreement. Wausau did not waive its right to dispute resolution under section 7 or fail to comply with the limitations period contained in section 7.4. In resolving the parties' dispute over Caterpillar's defense costs, the parties must initially determine the scope and applicability of the 1999 Agreement to the welding fumes claims. This opinion should not be construed as touching upon these substantive issues.

¶ 66　　　　　　　　　　　　　　　　　　III. CONCLUSION

¶ 67　　　　The judgment of the circuit court of Peoria County is affirmed.

¶ 68        Affirmed.