2022 IL App (2d) 220269-U
No. 2-22-0269
Order filed October 21, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| MIA PROCESSING LLC (f/k/a MJBC LLC), | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff and Counterdefendant-Appellant, | ) | |
| | ) | |
| v. | ) | Nos. 20-L-655 |
| | ) | 20-LM174 |
| | ) | |
| JOSEPH BURMAN, MICHAEL RONKOSKE, and SUNSET STORAGE LLC, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (Joseph Burman, Defendant, Counterplaintiff, | ) | Luis A. Berrones, |
| and Third-Party Plaintiff-Appellee). | ) | Judge, Presiding. |

PRESIDING JUSTICE BRENNAN delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The trial court did not err in denying plaintiff's emergency motion to compel arbitration on the basis that plaintiff waived its right to arbitrate. Affirmed.

¶ 2   Plaintiff, MIA Processing LLC (MIA), formerly known as MJBC LLC, sued, *inter alios*, defendant, Joseph Burman, in circuit court for breach of contract and other business torts. Burman counterclaimed for a declaratory judgment as to the percentage of his interest in MIA, violation of

the Illinois Limited Liability Act (805 ILCS 180/1-1 *et seq.* (West 2020)), and other related claims. Following the trial court's ruling in Burman's favor on his motion for summary determination of the effective operating agreement, MIA filed an emergency motion to compel arbitration. The trial court denied the motion to compel arbitration on the basis that MIA waived its right to arbitrate by litigating in circuit court for over two years without raising the arbitration clause. For the reasons set forth below, we affirm.

¶ 3                          I. BACKGROUND

¶ 4      MIA was formed in April 2019 with four members, including Burman. Later that year, a dispute arose among the parties, and this litigation ensued. We recount the procedural history in relevant part.

¶ 5                           A. Pleadings

¶ 6      On February 20, 2020, MIA filed its complaint against, *inter alios*, Burman in the circuit court of Will County. The complaint included a breach-of-contract claim against Burman. MIA alleged it "had an agreement with Burman to provide services to secure a business facility, to secure a lease and to retain and manage construction on the Property to meet the manufacturing needs" of MIA. However, MIA neither identified the agreement nor attached a copy of the agreement to the complaint.

¶ 7      The case was transferred to the circuit court of Lake County.[1] Thereafter, on October 22, 2020, Burman filed a counterclaim against MIA and third-party complaint against two of MIA's members. The counterclaim included a declaratory judgment count, in which Burman sought a

_____

[1]The complaint was consolidated with an eviction complaint filed by Sunset Storage LLC against MIA.

declaration that he has a 25% membership interest in MIA based upon its operating agreement. Burman attached the 2019 operating agreement as an exhibit to its counterclaim. The 2019 operating agreement contains a mandatory arbitration provision for dispute resolution.

¶ 8    On December 16, 2020, MIA filed its answer and six affirmative defenses to the counterclaim. The affirmative defenses were unclean hands, breach of fiduciary duty, detrimental reliance, estoppel, tortious interference with contract, and forfeiture.

¶ 9    MIA also filed an amended complaint on December 16, 2020. The amended complaint included a breach-of-contract claim against Burman and identified the contract as MIA's operating agreement. Attached as exhibits to the amended complaint were the 2019 operating agreement as well as an unsigned 2020 operating agreement in which Burman is not named as a member. The 2020 operating agreement does not include a mandatory arbitration provision.

¶ 10    On August 4, 2021, Burman filed an amended counterclaim and third-party complaint. The amended counterclaim maintained the declaratory judgment count, in which Burman sought a declaration that he has a 25% membership interest in MIA based upon the 2019 operating agreement and again attached the 2019 operating agreement as an exhibit. MIA never answered the amended counterclaim. Written discovery ensued, with both MIA and Burman issuing and responding to document requests, and the trial court granting Burman's motion to compel document responses. MIA also served a notice for Burman's deposition.

¶ 11                    B. Motion for Summary Determination

¶ 12    On March 23, 2022, Burman filed a motion for a summary determination of major issues pursuant to section 2-1005(d) of the Illinois Code of Civil Procedure (735 ILCS 5/2-1005(d) (West 2020)). The motion included a request for a determination that the 2019 operating agreement was the effective agreement. In response, MIA argued that issues of fact and law precluded a summary

determination that the 2019 operating agreement is the effective agreement or that the trial court should find that the 2020 operating agreement is the effective agreement. Alternatively, MIA argued that the case should be stayed pending an arbitrator's ruling as to the effective operating agreement or pending arbitration of the claims.

¶ 13     Following argument, on June 22, 2022, the trial court issued a written memorandum order, partially granting Burman's motion for summary determination and finding that the 2019 operating agreement is the effective agreement. The trial court reasoned that there was no evidence that Burman or any of MIA's members signed the 2020 operating agreement. In addition, the trial court rejected the argument that the 2020 operating agreement was an amendment to the 2019 operating agreement because any such amendments would have exceeded the managers' amendment authority. Accordingly, the only operating agreement at issue was the 2019 operating agreement.

¶ 14                    C. Emergency Motion to Compel Arbitration

¶ 15     On July 1, 2022 (four days before the scheduled July 5, 2022, trial), MIA filed an emergency motion to compel arbitration. Following argument, on July 5, 2022, the trial court denied the motion.

¶ 16     In its oral findings, the trial court reasoned as follows:

        "I don't think that you presented a case that shows that in fact you were not aware that [] this was a claim that should have been initially filed through the arbitration process, ADR process that was in the 2019 operating agreement.

        And starting with the amended complaint. We are in disagreement. I think objectively if you look at this, that is a lawsuit that raises a cause of action under the 2019 operating agreement from the beginning.

You chose to come to this Court instead of effectuating the ADR proceeding that was in the Article 12 of the operating agreement.

In addition, as [counsel for Burman] has pointed out[,] they filed a counterclaim. Part of it was a declaratory judgment, but there were other claims that you should have raised some issue with as far as those claims being arbitrable if in fact the Court found that the 2019 operating agreement was the operative agreement.

You did not. This is [] the 11th hour for this.

To be quite frank[,] I mean looking at this objectively[,] there is no way that anybody would say that Mr. Burman is in any way bound by the 2020 operating agreement. You have yet to show me that he signed it.

You anchor your entire argument on this argument the 2020 operating agreement is an amendment to the 2019 operating agreement. It is not.

It clearly states that on its face. It doesn't say it's an amendment. It says it supersedes any other agreement. That is not an amendment. It is a brand new document.

And I don't know what the future holds as far as how you dissociated Mr. Burman if that's what you claim he did.

Merely by adopting a different operating agreement[,] I don't know that works. It would be improper under the LLC provisions.

So I think that this is something that was in fact I said initially was forfeited.

But I think it was a concerted effort and a calculated decision to proceed in Court against Mr. Burman under the 2019 operating.

And it was a voluntary agreement, voluntary effort on your part to come here and that is, I think it is a waiver.

I don't think that you meet any of the requirements that are reflected in these cases even though these cases do not address the issue of two operating agreements being at issue.

Objectively, if I look at your amended complaint the only operating agreement that was at issue is the 2019 which had arbitration provision which you chose not to proceed under.

So I am going to deny the motion."

¶ 17 MIA timely filed a notice of interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), which permits a party to appeal from an interlocutory order "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." An order granting or denying a motion to compel arbitration is injunctive in nature and therefore appealable under Rule 307(a)(1). *Herns v. Symphony Jackson Square LLC*, 2021 IL App (1st) 201064, ¶ 14.

¶ 18                                        II. ANALYSIS

¶ 19 The central issue on appeal is the propriety of the trial court's ruling that MIA waived its right to arbitrate. Initially, the parties dispute the standard of review. MIA argues that we should apply a *de novo* standard of review because the trial court neither held an evidentiary hearing nor made factual findings in ruling on MIA's motion to compel arbitration. See *Watkins v. Mellen*, 2016 IL App (3d) 140570, ¶ 12. (We note that, despite this argument, MIA also intermittently frames the issue under the abuse-of-discretion standard of review terminology). Burman counters that we should apply an abuse-of-discretion standard of review, regardless of whether there was an evidentiary hearing, because the trial court " 'must necessarily engage in a factual inquiry to determine if a party's actions constitute waiver' " of the right to arbitrate. See, *e.g.*, *Glazer's*

*Distributors of Illinois, Inc. v. NWS-Illinois, LLC*, 376 Ill. App. 3d 411, 423 (2007) (quoting *Schroeder Murchie Laya Associates, Ltd. v. 1000 West Lofts, LLC*, 319 Ill. App. 3d 1089, 1093 (2001)); but see *Koehler v. The Packer Group, Inc.*, 2016 IL App (1st) 142767, ¶ 22 ("When reviewing a circuit court's ruling on whether a party has waived its right to arbitrate, we review findings of fact for an abuse of discretion and questions of law *de novo*.").

¶ 20    Here, there was no evidentiary hearing; the trial court was called upon to decide whether undisputed facts established that MIA waived its right to arbitrate as a matter of law. Under these circumstances, this court has applied a *de novo* standard of review. See *Household Finance Corp. III v. Buber*, 351 Ill. App. 3d 550, 553 (2004); see also *Rathje v. Horlbeck Capital Management, LLC*, 2014 IL App (2d) 140682, ¶ 40 ("Whether [defendant] waived its right to arbitration is a legal question, which we review *de novo*."). Regardless, we affirm the trial court's ruling under either standard of review.

¶ 21    MIA devotes a significant portion of its argument to the validity of the arbitration provision. However, the validity of the arbitration provision is not disputed. The question is whether MIA waived the right to arbitrate by acting inconsistently with the right. We turn to that issue.

¶ 22    Although arbitration is a favored method of settling disputes in Illinois, a party may waive the right to arbitrate. *Koehler*, 2016 IL App (1st) 142767, ¶ 22. Waiver of the right is disfavored but may occur where a party acts in a manner that is inconsistent with the arbitration clause, thereby reflecting an abandonment of the right to arbitrate. *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 38; *Koehler*, 2016 IL App (1st) 142767, ¶ 22.

¶ 23    The parties cite extensive jurisprudence on the issue of whether a party has waived its right to arbitrate. Courts have found waiver where, for instance, a party filed a complaint, answer,

or dispositive motion without asserting the right to arbitrate, requested arbitration only after an unfavorable outcome, or actively initiated discovery. See *Caterpillar Inc. v. Century Indemnity Co.*, 2019 IL App (3d) 190032, ¶ 29 (collecting cases); *TSP-Hope, Inc. v. Home Innovators of Illinois, LLC,* 382 Ill. App. 3d 1171, 1174-75 (2008) (collecting cases). However, courts have also held that the mere filing of such a pleading or motion or participation in discovery does not automatically result in a waiver of the right to arbitrate. See *Caterpillar*, 2019 IL App (3d) 190032, ¶ 29 (collecting cases); *TSP-Hope,* 382 Ill. App. 3d at 1174-75 (collecting cases). Rather, "the operative distinction between judicial filings and actions that constitute a waiver of the right to compel arbitration and those that do not is whether, prior to seeking to compel arbitration, the party has placed substantive issues before the court." *Watkins*, 2016 IL App (3d) 140570, ¶ 15. In other words, the question is the nature of the issue submitted to the court for consideration, not the form of the filing. *Id.*; see also *Kostakos v. KSN Joint Venture No. 1,* 142 Ill. App. 3d 533, 536-37 (1986) ("The existence of a waiver is determined by the types of issues submitted, not by the number of papers filed with the court.").

¶ 24    Here, the totality of the undisputed facts reflect that MIA acted inconsistently with its right to arbitrate. First, MIA filed its complaint in circuit court without mentioning the arbitration clause. See *Glazer's Distributors*, 376 Ill. App. 3d at 425-26 ("The central premise of our conclusion is that Glazer's, which initiated the underlying litigation as a plaintiff, filed its original complaint before the circuit court without making any mention of arbitration" and sought complete relief before the circuit court.).

¶ 25    In addition, when Burman filed his counterclaim, MIA answered the counterclaim and raised six affirmative defenses, none of which asserted the right to arbitrate. See *Koelher*, 2016 IL App (1st) 142767, ¶ 25 (while discovery responses alone were insufficient to waive the right to

arbitrate, the defendants' answer to the complaint, and assertion of an affirmative defense unrelated to the arbitration provision, resulted in a waiver of their right to arbitrate the plaintiff's claims).

¶ 26    MIA also actively engaged in discovery, including issuing document requests to Burman and serving a notice for Burman's deposition. MIA invoked the arbitration clause for the first time in its response to Burman's motion for summary determination, and even then, only as an alternative basis for relief. It was not until the eve of trial, and only after the trial court ruled against it on the substantive issue of the effective operating agreement, that MIA filed an emergency motion to compel arbitration.

¶ 27    In sum, MIA's actions fall squarely within the type of litigation conduct that amounts to waiver of the right to arbitrate. See *Caterpillar*, 2019 IL App (3d) 190032, ¶ 29 (collecting cases); *TSP-Hope,* 382 Ill. App. 3d at 1174-75 (collecting cases).

¶ 28    To escape this conclusion, MIA maintains that this case is analogous to *Kostakos*, where the appellate court affirmed the trial court's grant of the defendants' motion to compel arbitration despite a delay in asserting the right to arbitrate. *Kostakos*, 142 Ill. App. 3d at 536-37. In *Kostakos*, the plaintiff filed a complaint in circuit court, seeking to dissolve a joint venture agreement. *Id.* at 534-35. While the agreement contained an arbitration clause, the defendants proceeded to participate in discovery and file several procedural motions in circuit court without raising the right to arbitrate until 15 months later, when they answered the complaint and invoked the arbitration clause as an affirmative defense. *Id.* at 535. Seven months after that, when the case was set for trial, the defendants filed a motion to compel arbitration, which the trial court granted. *Id.* at 536.

¶ 29    In affirming, the appellate court reasoned that the defendants' participation in the judicial proceedings was not so inconsistent with their contractual right to arbitrate as to indicate an

abandonment of the right. *Id.* at 536-37. Namely, despite the defendants' filings and participation in discovery, they never submitted any substantive questions to the court for determination. *Id.* The appellate court concluded that the parties' creation of "a chain of complicated and intertwined legal relationships on paper does not alter the basic fact that [the parties] agreed to arbitrate all claims relating to their joint venture ***." *Id.* at 539.

¶ 30 *Kostakos* is readily distinguishable. Here, unlike the defendants in *Kostakos*, MIA is the plaintiff and chose the litigation forum in the first instance. See *Glazer's Distributors*, 376 Ill. App. 3d at 425-26. In addition, as discussed, MIA answered Burman's counterclaim and raised six affirmative defenses—none of which was the right to arbitrate. See *Koelher*, 2016 IL App (1st) 142767, ¶ 25 ("Where, as here, a defendant files an answer without simultaneously asserting the right to arbitrate, Illinois courts generally find that a waiver has occurred.") (collecting cases). MIA proceeded to engage in discovery and invoked the arbitration clause after an adverse substantive ruling. These are the precise circumstances under which a party may be found to have abandoned its right to arbitrate. See *Feldheim v. Sims*, 326 Ill. App. 3d 302, 311 (2001) ("defendants' participation in the litigation was not merely responsive and its motions were not filed solely to protect its rights from litigation"). Accordingly, MIA waived its right to arbitrate disputes relating to the 2019 operating agreement.

¶ 31 MIA nevertheless argues that it initiated the litigation in circuit court based upon the 2020 operating agreement, which did *not* contain an arbitration clause. MIA notes that its complaint and amended complaint both referenced the 2020 operating agreement. According to MIA, it "became subject" to the 2019 operating agreement only after the trial court issued its ruling on Burman's motion for summary determination. We note that the legal theory for the validity and application of the unsigned 2020 operating agreement is not clear from MIA's argument. Regardless, however,

Burman explicitly based his counterclaim on the 2019 operating agreement, which *did* contain an arbitration clause. MIA did not file an arbitration demand. MIA did not move to dismiss Burman's counterclaim based on the arbitration clause. Instead, MIA filed an answer and six affirmative defenses to the counterclaim, none of which raised the arbitration clause. As set forth above, having lost the argument as to the effective operating agreement, MIA may not now seek an alternative forum in which to pursue its claims. Under the circumstances of this case, we are compelled to hold that MIA waived its right to arbitrate.

¶ 32    MIA raises two final arguments. First, MIA argues that the trial court abused its discretion in "utilizing procedure and standards" that were "contrary to Illinois law and practice" in denying its motion to compel arbitration. However, MIA fails to identify the purported procedures and standards to which it refers and offers no supporting argument in violation of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) (an argument must "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"). Accordingly, the argument is forfeited. See *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 12 (the plaintiff's argument was forfeited for failure to comply with Rule 341(h)(7)).

¶ 33    Second, MIA argues that the trial court abused its discretion in denying it the "opportunity to fully review the cases submitted by Burman and to file a written response to the cited cases." However, MIA's motion to compel arbitration was styled an emergency motion and heard the day of trial. The record demonstrates that the trial court provided MIA's counsel the opportunity to review the cases to which Burman cited and respond to them (the cases are cited herein and in the briefs before this court). MIA makes no substantive argument as to how the lack of additional briefing presents a basis for reversal and instead suggests that it was entitled to an evidentiary

hearing. There is simply no basis upon which to hold that MIA was entitled to an evidentiary hearing. Accordingly, the trial court did not err in denying MIA's emergency motion to compel arbitration.

¶ 34                                    III. CONCLUSION

¶ 35    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 36    Affirmed.